UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMINTY COMPANY, GEICO
GENERAL INSURANCE COMPANY, and GEICO
CASUALTY COMPANY,

              *Plaintiffs*,

   -against-

Q PHARMACY RX, INC., BORISLAV YUSUPOV, and
JOHN DOE DEFENDANTS "1" THROUGH "5"

              *Defendants*.

23-CV-9085 (ARR) (TAM)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") move for an order staying the pending no-fault insurance collection arbitrations that defendants' Q Pharmacy RX, Inc., Borislav Yusupov, and John Doe Defendants "1" through "5" have commenced against GEICO. GEICO also moves for an order enjoining defendants, or anyone purporting to act on their behalf, from commencing further no-fault insurance collection arbitrations or new no-fault collection litigation against GEICO. For the following reasons, I grant GEICO's motion.

**BACKGROUND**

GEICO is an insurance company that is authorized to issue automobile insurance policies in New York. Am. Compl. ¶ 10, ECF No. 15. This lawsuit is one in a series of actions that GEICO has brought against entities and individuals alleging fraudulent medical billing under New York's no-fault insurance laws. *See, e.g.*, *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 386 (E.D.N.Y. May 3, 2022) (colleting cases). In this case, GEICO alleges that defendants wrongfully

billed it more than $3.7 million as part of a fraudulent no-fault insurance scheme. Am. Compl. ¶ 1.

New York enacted its Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §§ 5101–5109, to ensure that individuals could receive prompt compensation for losses incurred during an accident without regard to fault. *See Tolmasov*, 602 F. Supp. 3d at 383. This law and the regulations promulgated thereunder, N.Y. Comp. Codes R. & Regs. tit. 11, § 65 ("N.Y.C.R.R."), require no-fault insurers like GEICO to provide personal injury protection benefits up to $50,000 per insured, including for necessary expenses incurred for medical services, regardless of whether the insured provides proof of the other driver's fault. *Id.* Under this scheme, an insured may assign his or her benefits "directly to providers of health care services," which allows those providers to submit claims directly to and receive payment from the insurance company for medically necessary services. 11 N.Y.C.R.R. § 65-3.11(a). Insurers must verify a claim and then pay or deny that claim within thirty days. N.Y. Ins. Law § 5106(a); 11 N.Y.C.R.R. § 65-3.8(a), (c). "A claimant may bring a civil collection action in state court to recover overdue No-Fault benefits." *Tolmasov*, 602 F. Supp. 3d at 383. Health care providers as assignees of an insured may also submit payment disputes to arbitration. N.Y. Ins. Law § 5106(b); 11 N.Y.C.R.R. §§ 65-4.5, 65-4.2(a)(2).

GEICO alleges that defendants developed a fraudulent scheme to exploit New York's no-fault insurance system. Am. Compl. ¶ 1. Under this alleged scheme, defendants induced health care providers to unlawfully prescribe insureds medically unnecessary drugs that they acquired at a low cost but for which they sought reimbursement at "egregiously high" prices. *Id.* ¶¶ 6, 8, 49, 54, 101. Plaintiff contends that defendants induced prescribers to participate in this scheme by paying them "unlawful kickbacks" or by providing "other financial incentives." *Id.* ¶¶ 8, 52. Plaintiff also alleges that the claims defendants submitted, and continue to submit, are based on

2

"illegal, invalid, and duplicitous prescriptions." *Id.* ¶¶ 4, 6, 8, 53, 59–60, 84. To support these allegations, GEICO details: research suggesting that certain drugs that defendants prescribed—specifically various topical pain medications—are ineffective, unapproved by the FDA, or were otherwise medically unnecessary to patients' treatment, *id.* ¶¶ 5–6, 53, 85–99, 135–55; a pattern of defendants allegedly submitting "telephone prescriptions"—reserved by New York law for limited circumstances—for reimbursement, *id.* ¶¶ 60–72; and a chart of the "fraudulent claims. . . [that defendants] submitted . . . to GEICO" that comprise the pattern of racketeering activity alleged, *id.* ¶ 9; *see also* Compl., Ex. 1, ECF No. 1-3.[1] Plaintiff has supplemented this record with exhibits attached to its motion to stay; these include but are not limited to: a declaration by Dr. Phyllis Gelb who asserts that she never authorized certain prescriptions that were issued under her name, Pl.'s Mot. Stay and Enjoin ("Pl.'s Mot."), Ex. 2, at ¶¶ 21–24, ECF No. 22-3; a sample of telephone prescriptions purportedly issued by Dr. Gelb and used by Q Pharmacy to bill GEICO, *id.* Decl. Michael Sirignano ¶ 15, ECF No. 22-1; *see also id.* Ex. 3, ECF No. 22-4; and a sample of other alleged fraudulent telephone prescriptions from other prescribers, *id.* Decl. Michael Sirignano ¶ 17; *see also id.* Ex. 5, ECF No. 22-6.

After GEICO filed its Amended Complaint, it filed the present motion seeking: (1) an order staying all pending no-fault insurance collection arbitrations that defendants have commenced against GEICO; and (2) an injunction enjoining defendants from initiating new no-fault insurance collection arbitrations and new no-fault collection litigation against GEICO. Pl.'s Mot. 1, ECF No.

---

[1] I cite to the initial Complaint because Exhibit 1 is attached only to the initial Complaint. The only difference between the initial Complaint and the Amended Complaint, however, is that the Amended Complaint has redactions to protect confidential patient information. Pl.'s Mot., Pl.'s Mem. Law 2, n.1 ("Pl.'s Mem."), ECF No. 22-8.

3

22.²

## LEGAL STANDARD

A motion to stay pending no-fault insurance collection arbitrations and enjoin the filing of further claims is subject to the preliminary injunction standard. *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-6118 (DG), 2021 WL 1146051, at *4 (E.D.N.Y. Mar. 25, 2021) (collecting cases). Accordingly, the party seeking the stay must demonstrate "irreparable harm" and show "either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. N.Y. Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quotation marks omitted).

## DISCUSSION

GEICO has demonstrated that: (1) it will experience irreparable harm absent a stay; (2) there are sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) the balance of the hardships tips decidedly in its favor; and (4) it is not required to post security.

### I. Absent a stay, GEICO will experience irreparable harm.

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir.

---

² Plaintiff does not request that I enjoin no-fault collection litigation currently pending in state court. Pl.'s Mot. 1. Whether a federal court may stay pending state court litigation in cases such as this, or whether the Anti-Injunction Act bars doing so, is a question on which courts in this circuit have reached different conclusions. *See State Farm Mut. Auto. Ins. Co. v. Kotkes*, No. 22-CV-3611, 2023 WL 4532460, at *11–13 (E.D.N.Y. July 13, 2023) (describing the different conclusions). The Anti-Injunction Act is not implicated where, as here, a plaintiff requests only that the court enjoin the filing of future lawsuits. *See Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("The Anti-Injunction Act does not prevent a federal court from restraining a party from instituting future state proceedings.").

2003). "Mere litigation expense, even substantial and recoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Nor does arbitration of a dispute properly subject to arbitration, without more, typically constitute irreparable harm. *See Emery Air Freight Corp. v. Loc. Union 295*, 786 F.2d 93, 99–100 (2d Cir. 1986) (holding that when a party has agreed to arbitration, arbitration itself generally "imposes no such [irreparable] injury to the resisting party"); *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 14 (2d Cir. 2010) ("A party suffers no legally cognizable injury at all, let alone irreparable injury, by being compelled to engage in arbitration to which he has contractually agreed.").

GEICO argues that it will suffer irreparable harm absent a stay and injunction because permitting the current arbitrations to proceed and defendants to bring future arbitrations and actions in civil court would subject it to a risk of inconsistent judgments: the conclusions that arbitrators may reach in the collection proceedings or that judges may reach in future civil court actions may be inconsistent with a future judicial ruling in this declaratory judgment action. Pl.'s Mem. 11–12. Courts in the Second Circuit have routinely found that the risk of inconsistent judgments in this context constitutes irreparable harm. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Kotkes*, No. 22-CV-3611, 2023 WL 4532460, at *2 (E.D.N.Y. July 13, 2023) (explaining that "multiple inconsistent rulings [in state court and arbitration proceedings] could bar State Farm's ability to litigate significant portions of its declaratory judgment action in federal court"); *Tolmasov*, 602 F. Supp. 3d at 389 ("[A]llowing the 196 collection arbitrations to proceed before different arbitrators . . . would very likely subject GEICO to independent and contradictory conclusions that ultimately may be rendered ineffective by this Court, pending the disposition of GEICO's instant lawsuit." (quotation marks omitted)); *Gov't Emps. Ins. Co. v. Mayzenberg*, No.

5

17-CV-2802, 2018 WL 6031156, at *9 (E.D.N.Y. Nov. 16, 2018) ("For the reasons the Court considered when it decided to stay any future arbitrations, [which included the risk of inconsistent judgments], GEICO will also be irreparably harmed if it is subject to hundreds of different state court rulings.").

None of the arguments that defendants advance warrant departing from this overwhelming consensus. Defendants principally rely on the Second Circuit's nonprecedential summary order in *Allstate Ins. Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. Appx. 716 (2d Cir. Jan. 27, 2017). *See* Defs.' Opp'n Pl.'s Mot. Stay 4–6 ("Defs.' Opp'n"), ECF No. 23-14. As I—and numerous other judges in this district—have explained in previous cases, "*Harvey* did not address the risk of inconsistent judgments and therefore 'does not preclude granting an injunction to avoid' such an outcome." *Gov't Emps. Ins. Co. v. Avonora Inc.*, No. 23-CV-3409 (ARR), at 6, ECF No. 40 (E.D.N.Y. Sept. 18, 2023) (quoting *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB), 2020 WL 3503176, at *2 (E.D.N.Y. June 29, 2020)); *see also Gov't Emps. Ins. Co. v. Gerling*, --- F. Supp. 3d ---, 2024 WL 779276, at *4 (E.D.N.Y. Feb. 26, 2024).

Defendants also cite *Government Employees Insurance Company v. Mahmood*, No. 23-CV-4388 (NGG), 2024 WL 113958 (E.D.N.Y. Jan. 10, 2024), to support their argument that plaintiff failed to establish that it would suffer an irreparable harm absent a stay. Defs.' Opp'n 6–7. In *Mahmood*—a case that is somewhat similar to the instant case—the court denied GEICO's motion to stay pending no-fault collection arbitrations that the defendants had commenced against GEICO because it concluded that GEICO failed to show irreparable harm. *Id.* at *1, *5–7. The court distinguished its case from the overwhelming precedent finding that a risk of inconsistent judgments in this context constitutes irreparable harm on the following grounds: (1) the defendants in that case were not insolvent, which decreased the risk that the plaintiffs would be unable to

6

recover arbitration payments should they ultimately prevail; (2) there were only 34 pending arbitrations in its case, which was significantly fewer than in other similar cases; and (3) the claims in that case "involve[d] much more ordinary allegations of fraud" than in the other cases in which "courts granted a stay and preliminary injunction" in similar contexts. *Id.* at * 5–7. The instant case is distinguishable from *Mahmood*. In this case, there are currently anywhere from 90 to 99 pending arbitrations—significantly more than *Mahmood's* 34. Pl.'s Mem. 9; *see also* Pl.'s Mot., Ex. 1, at ¶ 7, ECF No. 22-2; Defs.' Opp'n 1. Further, GEICO alleges that defendants unlawfully billed it for medication that they received from out-of-state suppliers that were not registered in New York. Am. Coml. ¶¶ 135–55; *see also* Pl.'s Mem. 17. New York law, however, requires that out-of-state drug suppliers register with the state. *See* N.Y. Educ. L. § 6808-b; 8 N.Y.C.R.R. § 63.8(b). This allegation of insufficient licensing brings the instant case closer to the cases that *Mahmood* distinguished as containing "evidence of fraud" beyond the ordinary level. *Mahmood*, 2024 WL 113958, *6–7 (distinguishing its case as one of "ordinary" fraud from cases in which there was "more evidence of fraud because plaintiffs practiced without a license, unlicensed laypersons illegally controlled their practices, or there were related criminal proceedings" (cleaned up)).

More importantly, risk of inconsistent judgments creates irreparable harm because inconsistent judgments negatively affect the administration of justice, which *Mahmood* did not address. As GEICO argues, viewed in isolation, a particular claim for reimbursement may seem facially legitimate; it is only after viewing all claims collectively that the fraud becomes clear. Am. Compl. ¶ 194; Pl.'s Mem. 2–3. There are, however, structural barriers that prevent New York state courts and arbitrators from reviewing multiple no-fault claims at once. *See State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 229–30 (E.D.N.Y. 2018) (explaining that consolidating no-fault insurance cases is "highly disfavored by courts [in New York state]" and that doing so

7

"usually requires the claims to arise out of the same accident" (quoting *Urban Radiology, P.C. v. GEICO Ins. Co.*, 958 N.Y.S.2d 64 (Table), 2010 WL 3463018, at *1 (N.Y. Civ. Ct., 2010)); *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible . . . . Discovery is limited or nonexistent."). The declaratory judgment procedure, on the other hand, "is ideally suited to resolving . . . broad claims," and its "very purpose" is to "avoid a multiplicity of lawsuits and piecemeal litigation." *Parisien*, 352 F. Supp.3d at 230 (quoting *Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.*, 770 F.2d 328, 337 (2d Cir. 1985)). Because structural barriers impede holistic review of fraudulent no-fault schemes in state court and arbitration proceedings, but such barriers do not exist for the declaratory judgment procedure in federal court, the likelihood increases that inconsistent rulings could result from no-fault claims in state court and arbitrations and declaratory judgment actions in federal court. Inconsistent rulings between state courts and federal courts are problematic because "[a]ny judgment in the state no-fault proceedings will be *res judicata* for the purposes of this action"; this would mean that if GEICO suffers an adverse judgment in state court, I would be "bound to adhere to that decision, even though the state court may not have been able to consider what seems to be the heart of [GEICO's] complaint." *Parisien*, 352 F. Supp. 3d at 229 (quotation omitted). Numerous courts have also raised problematic consequences that could result if a declaratory judgment were ultimately inconsistent with arbitral awards, including that the arbitral awards could be rendered essentially ineffective. *See Kotkes*, 2023 WL 4532460, at *9 (collecting cases that describe the "problematic impact" inconsistent arbitral awards may have on a "future declaratory judgment"). Due to the risk of inconsistent judgments that would result were I not to grant a stay, I conclude that GEICO has met its burden to demonstrate irreparable harm.

## II. GEICO has shown serious questions going to the merits, and the balance of hardships tips in its favor.

GEICO must also demonstrate either a "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a ground for litigation." *Otoe-Missouria Tribe of Indians*, 769 F.3d at 110 (quotation omitted). "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a ground for trial." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013). Further, "[t]he serious questions standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail"; this approach is valuable given "its flexibility in the face of . . . the greater uncertainties at the outset of particularly complex litigation," like the instant case. *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

GEICO has demonstrated sufficiently serious questions going to the merits. Its Amended Complaint "detail[s] a complicated scheme of alleged fraudulent activity" supported by specific examples and exhibits. *Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013). The evidence that GEICO offers includes: a list of over 4,000 allegedly fraudulent claims that defendants submitted identified by GEICO as of the date it filed its complaint, Compl. Ex. 1; a sworn statement from a doctor attesting that she never issued or authorized anyone to issue on her behalf prescriptions via telephone, Defs.' Mot., Ex. 2, at ¶ 38; a sample of telephone prescriptions purportedly issued by that same doctor and used by defendants to bill GEICO, *id.*, Ex. 3; and a sample of other alleged telephone prescriptions from prescribers working at other locations, *id.*, Ex. 5.

GEICO's Amended Complaint also includes detailed allegations that defendants provided systematized treatments based on fraudulent protocols that were untethered to actual and necessary

9

patient care, Am. Compl. ¶¶ 6, 53, 58; that defendants dispensed drugs that were either not FDA approved or indistinguishable from cheaper alternatives, *id.* ¶¶ 48, 53–54, 68, 140, 156; that such drugs represented approximately 85% of the billing that defendants submitted to GEICO, *id.* ¶ 49; that defendants obtained prescriptions and submitted claims to GEICO for drugs produced or packaged by unregistered suppliers, *id.* ¶¶ 135, 144–45, 155–62; and that defendants developed collusive arrangements with prescribing providers involving payment of kickbacks in exchange for prescriptions, as evidenced by the fact that prescriptions for certain medications were directed to defendants' pharmacy even though in many instances the patients "were located in counties far from [defendants' pharmacy]," *id.* ¶ 168. These allegations and examples are sufficient to raise a serious question going to the merits. *See e.g., Kotkes*, 2023 WL 4532460, at *10 (finding a serious question going to the merits where the plaintiff's complaint "alleges in detail" an "extensive scheme of fraudulent activity, including providing systematized treatments unmoored from standards of medically necessary patient care"; *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 453 F. Supp. 3d 443, 454 (E.D.N.Y. 2020) (determining that plaintiff met the threshold of showing a serious question going to the merits where the complaint documented numerous instances in which defendants submitted "claims to GEICO based on defendants' routine prescription of medically unnecessary pharmaceuticals"); *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC), 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019) (finding a serious question going to the merits where the plaintiffs "alleged, in significant detail, facts relating to Defendants' fraudulent activity in its Complaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme.").

    Defendants do not meaningfully argue that plaintiff failed to raise a serious question going to the merits. They contend that I should disregard plaintiff's allegations that the topical pain

products are not medically necessary because numerous arbitrators in no-fault proceedings against GEICO have rejected such arguments. Defs.' Opp'n 9. As I previously acknowledged, however, arbitrators are not well equipped in no-fault proceedings to recognized broad, complicated, and fraudulent schemes. *See Parisien*, 353 F. Supp. 3d at 229 ("Facially legitimate treatments may be provided with little variance across multiple patients, but it is only by analyzing the claims as a whole that the irresistible inference arises that the treatments are not being provided on the basis of medical necessity."). Defendants further argue that the telephone prescriptions that GEICO identifies are irrelevant because "[n]one of these prescriptions are for pending claims that are the subject of the instant motion." Defs.' Opp'n 9–10. As plaintiff rebuts, even if these specific prescriptions are not related to pending arbitration claims, some of the prescription providers associated with these alleged fraudulent prescriptions are implicated in pending arbitration claims against GEICO. *Compare*, Pl.'s Mot., Ex. 5, at 2, 9, 13 (naming Adnan Qureshi, Eric Berger, and Demetrious Koutsospyros as prescription providers in a sample of alleged fraudulent telephone prescriptions) *with* Defs.' Opp'n, Decl. Borislav Yusupov, Ex. B, at 1, ECF No. 23-12 (naming Adnan Qureshi, Eric Berger, and Demetrious Koutsospyros as "med provider[s]" in certain pending, settled or previously decided arbitrations). This fact—in addition to Dr. Gelb's affirmation that she never issued prescriptions for pharmaceutical products over the telephone, Pl.'s Mot., Ex. 2, at ¶¶ 21–24, yet GEICO produced evidence of prescriptions purportedly issued by Dr. Gelb over the telephone, *id.*, Ex. 3, ECF No. 22-4 —raises the specter that some pending arbitration claims could involve fraudulent telephone prescriptions.

    Ultimately, because plaintiff provided detailed factual allegations, supported by specific examples and exhibits, I conclude that it raised sufficient questions going to the merits.

### A. The balance of the hardships tips in GEICO's favor.

There is broad agreement that a billing entity experiences no hardship if its right to collect from an insurer is adjudicated in a single action, rather than on a piecemeal basis. *Parisien*, 352 F. Supp. 3d at 234–35 ("If . . . [plaintiff] fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits to which they are entitled will be delayed; all Defendants can hope for in pursuing their parallel . . . arbitrations is to accelerate their receipt of benefits to which they are already entitled."); *Tolmasov*, 602 F. Supp. 3d at 393 ("[G]ranting the stay and injunction will actually save all parties time and resources."). Despite this broad agreement, defendants advance two arguments to support their position that the balance of the hardships tips in their favor. First, defendants argue that if they "lose [their] statutory right to file no-fault arbitrations against GEICO . . . [they will experience] substantial loss in revenue." Defs.' Opp'n. 11. This argument disregards the fact that if defendants ultimately prevail in this matter, a stay could benefit them because they would be entitled to statutory interest. *See* 11 N.Y.C.R.R. § 65-3.9(1)(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month."). A number of courts in this district have recognized that a defendant's potential to earn statutory interest is a factor that pushes the balance of hardships in the plaintiff-insurer's favor. *See, e.g., Elzanaty*, 929 F. Supp. 2d at 222 (noting that the defendant would benefit from the stay if it ultimately prevailed because of the statutory interest provision); *Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab'y, LLC*, No. 20-CV-2391 (KAM), 2020 WL 7042648, at *8 (E.D.N.Y. Dec. 1, 2020) (same).

Second, defendants contend that if I grant plaintiff's motion for a preliminary injunction there is a risk that the underlying insureds' no-fault insurance benefits would exhaust, making it

12

impossible for defendants to recover. Defs.' Opp'n 12. Defendants fail to cite a policy that articulates this exhaustion principle. *Id.* Other courts in this district have rejected this argument as speculative in the face of a lack of corroborating evidence. *See., e.g., State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C*, No. 21-CV-5523 (MKB), 2022 WL 1606523, at *20–21 n. 18 (E.D.N.Y. May 20, 2022) (determining that the level of uncertainty that the plaintiff-insurer faced with numerous pending arbitrations and "certainly thousands of additional arbitrations and state-court proceedings" outweighed the level of uncertainty that the defendants faced with their competing concern of policy exhaustion); *Moshe*, 2020 WL 3503176, at *3 (characterizing defendants' exhaustion argument as "speculative at best considering defendants do not identify any imminent exhaustion issues" and determining that the balance of hardships favors the plaintiff-insurer).

On the other hand, if the pending arbitrations are not stayed, GEICO would be forced to litigate approximately 90 pending individual no-fault arbitrations seeking more than $196,000, and even more future arbitrations and state civil court actions. Pl.'s Reply Supp. Mot. Stay 16, ECF No. 24-4. Courts in this circuit have recognized that the balance of hardships tips in the plaintiff-insurer's favor when it faces circumstances similar to what GEICO faces here. *See Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 503 (E.D.N.Y. 2021) (finding that the balance of hardships tips in the insurer's favor because "a stay of thirty-nine AAA arbitrations seeking to collect more than $74,000 and future arbitrations and lawsuits addressing similar claims, will save the parties time and resources and promote judicial efficiency); *Tolmasov*, 602 F. Supp. 3d at 393 (determining that the balance of hardships would tip in the plaintiff-insurer's favor because, absent a stay, "it [would] suffer irreparable harm [as] money damages [would] be inadequate to remedy

13

the [p]laintiff[']s] time and losses, and because of the risk of inconsistent outcomes"). Accordingly, I conclude that the balance of hardships tips in favor of GEICO.

### III.    GEICO is not required to post security.

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The district court "is vested with wide discretion in the matter of security." *Dr.'s Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

Defendants cite only one similar case to support its argument that GEICO should be required to post security. *Gov't Emps. Ins. Co. v. Strut*, No. 19-CV-728V, 2019 WL 6338023, at *9 (W.D.N.Y. Nov. 26, 2019). As I explained in *Avonora*, "the weight of authority goes in the other direction, particularly where—as here—there is no concern that plaintiff cannot pay if defendants prevail." No. 23-CV-3409, at 10 (citing *Relief Med.*, 554 F. Supp. 3d at 505–06; *Metro Pain*, 2022 WL 1606523, at *22; *Moshe*, 2020 WL 3503176, at *4; *Gov't Emps. Ins. Co. v. Zilberman*, No. 20-CV-209 (FB), 2021 WL 1146086, at *2–3 (E.D.N.Y. Mar. 25, 2021). Because GEICO can undoubtedly pay if defendants prevail and defendants have failed to provide sufficient evidence that it will suffer harm from this injunction, I waive the bond requirement.

## CONCLUSION

For the foregoing reasons, GEICO's motion is GRANTED, and a preliminary injunction is issued (i) staying all pending no-fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of defendants, pending the disposition of GEICO's claims in this action, and (ii) enjoining defendants and anyone acting on their behalf from

14

commencing any further no-fault insurance collection arbitrations or new no-fault collection litigation against GEICO pending the disposition of GEICO's claims in this action.

SO ORDERED.

                                                                  /s/
                                                Allyne R. Ross
                                                United States District Judge

Dated:      August 15, 2024
              Brooklyn, New York

Case 1:23-cv-09085-ARR-TAM   Document 25   Filed 08/15/24   Page 15 of 15 PageID #: 702